IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

ANN NAUMANN,

       Plaintiff,

  v.                                Civil Action No.
                                      1:17-CV-1126 (DEP)

NANCY A. BERRYHILL, Acting Commissioner
  of Social Security,

       Defendant.

---

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

INSLER LAW OFFICE           LEWIS B. INSLER, ESQ.
17 Newcomb Place
White Plains, 10606

FOR DEFENDANT:

HON. GRANT C. JAQUITH      FERGUS J. KAISER, ESQ.
United States Attorney         Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Acting Commissioner of Social Security, pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on May 17, 2018, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Acting Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Acting Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_David E. Peebles_
David E. Peebles
U.S. Magistrate Judge

Dated:   May 31, 2018
         Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ANN P. NAUMANN,

                        Plaintiff,

vs.                                              17-CV-1126

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                        Defendant.

------------------------------------------------------------x
```

*DECISION* - May 17, 2018

James Hanley Federal Building, Syracuse, New York

HONORABLE DAVID E. PEEBLES

United States Magistrate-Judge, Presiding


A P P E A R A N C E S (by telephone)

| | |
|---|---|
| For Plaintiff: | LEWIS B. INSLER<br>Attorney at Law<br>17 Newcomb Place<br>White Plains, NY 10606 |
| For Defendant: | SOCIAL SECURITY ADMINISTRATION<br>Office of Regional General Counsel<br>26 Federal Plaza<br>New York, New York 10278<br>  BY:  FERGUS J. KAISER, ESQ. |

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1  THE COURT: Well, I have before me a request for
2  judicial review of an adverse determination of the
3  Commissioner pursuant to 42, United States Code, Section
4  405(g). The background is as follows.
5  Plaintiff was born in May of 1962. She is
6  currently almost 56 years of age. She was 53 years old at
7  the time of the hearing in this matter, and 48 years old at
8  the time of the alleged onset of her disability.
9  She stands either 5-foot-4 or 5-foot-5, depending
10 on what reference you look at in the Administrative
11 Transcript, and weighs 176 pounds. She is right-hand
12 dominant. She is married with five grown children. She does
13 have a 24-year-old son who lives with her and her husband.
14 She and her husband and the son live in a mobile home in
15 Stone Ridge, New York.
16 Plaintiff has a driver's license but does not
17 drive. Claims that the neuropathy affects her ability to
18 drive. She's a high school graduate. It's unclear whether
19 she actually graduated high school or secured a GED. There
20 is reference somewhere in the record to a GED.
21 In terms of work, she last worked in either 2011 or
22 2012, depending on whether you look at her hearing testimony
23 at 56, or a functional report at 201. She worked at
24 Devereux, a place assisting mentally ill persons. She was a
25 driver and had other duties briefly at the United Cerebral

1   Palsy Center.  She was a driver and a support person at an
2   ARC Center.  She has worked as a home health aide in Ulster
3   County, and in a kennel as a manager and assisted in
4   transporting and caring for animals, primarily dogs.
5              Physically she has suffered over the years from
6   asthma; currently uses a nebulizer and an inhaler.  She did
7   appear at an emergency room at Kingston Hospital for
8   treatment and was released on September 24, 2012.  That's at
9   1F.  She also went to Urgent Care in March of 2014.  That's
10  at 344 of the Administrative Transcript.  She declined the
11  recommendation, however, that she go to the emergency room on
12  that occasion.
13             She suffers from neuropathy peripherally.  She
14  apparently was diagnosed at one point with Guillian-Barre
15  Syndrome and was hospitalized perhaps in 2004, that's at 352,
16  and again in 2008, that's at 260 and 261.  It especially
17  affects her feet and she has balance issues and can't feel
18  her feet.
19             She has seen briefly a neurologist, Dr. Ashlesh
20  Dani, since 2015.  I think she had perhaps three visits with
21  him.  She suffers from GERD, but with minimal limitations.
22  She has a BMI of 31.06, and therefore is considered obese.
23  That's at 325.  She has hypertension, but it appears to be
24  controlled with medication.  She claims to suffer from sleep
25  issues and fatigue, but as the Commissioner's Council noted,

on many occasions when visiting health care providers she denied the existence of fatigue.

She has had carpal tunnel syndrome. Dr. Dani saw her for that. And Dr. Jenouri referenced it but indicated there was no evidence of any limitation associated with her carpal tunnel syndrome. Plaintiff sees primarily Dr. Daniel Hafner and Nurse Practitioner Cynthia Pascaretti about every three months. They practice with the Mid-Hudson Medical Group.

She has been on many medications, including Cymbalta, Advil, ADVAIR, Albuterol, Lisinopril for blood pressure, Prilosec for stomach, and Ventolin for asthma. Mentally she also complains of depression and anxiety; however, she has not sought any specialized psychiatric or psychological treatment. She has been prescribed Cymbalta, which addresses those conditions.

In terms of daily activity, she cooks most meals. That's at 187. Although during the hearing she claimed that her husband cooks. That's at 61. She told Dr. Jenouri she cooks every day. That's at 273. She goes to yoga. She can care for her personal hygiene and dressing. She watches television, sits outside, does crossword puzzles, helps her nine-year-old granddaughter with homework, takes care of house plants, does laundry and dishes. That's at 188 and 62. Although she claimed during the hearing that her son does the

1  laundry.  That's at 62.
2          Procedurally plaintiff applied for Title II
3  disability benefits on December 3, 2013, alleging an onset
4  date of January 5, 2011.  The hearing was conducted by
5  Administrative Law Judge Vincent Cascio on April 19, 2016, in
6  which plaintiff and a vocational expert testified.  On
7  June 15, 2016 ALJ Cascio issued an unfavorable decision
8  finding that plaintiff was not disabled at the relevant times
9  and, therefore, ineligible for the benefits sought.
10         On August 17, 2017 the determination became final
11 when the Social Security Administration Appeals Council
12 denied plaintiff's application for review of that
13 determination.
14         In his decision ALJ Cascio applied the familiar
15 five-step sequential test for determining disability.
16         At step one he concluded that plaintiff had not
17 engaged in any substantial gainful activity since the alleged
18 onset date.
19         At step two he concluded that she suffers from
20 severe impairments, including peripheral neuropathy,
21 bilateral foot pain, paresthesia, asthma and syncope/vertigo.
22         At step three he concluded, however, that none of
23 these conditions meet or medically equal any of the listed
24 presumptively disabling conditions.
25         At step four -- well, first, after surveying the

1  medical evidence, the ALJ concluded that plaintiff is capable
2  of performing a full range of light work, with exceptions to,
3  for example, climbing ramps and stairs and so forth, as well
4  as avoiding exposure to respiratory irritants.  That's at
5  page 26 of his decision.
6          Applying that RFC, or Residual Functional Capacity,
7  determination at step four, the ALJ concluded that plaintiff
8  is unable to perform her past relevant work as a PT aide, an
9  animal caretaker, and an attendant at a children's
10 institution.
11         Applying the light range, the light work finding
12 and Grid Rule 202.14, a finding of no disability would have
13 been directed.  Because of the additional non-exertional
14 requirements for limitations, the opinion of a vocational
15 expert was sought.  And based on that testimony of the
16 vocational expert, the ALJ concluded the plaintiff can
17 perform the jobs of assembler, small products II, sub
18 assembler and wire worker.  And, therefore, concluded she was
19 not disabled at the relevant times.
20         As you know, my role in this case is limited to
21 determine whether correct legal principles were applied and
22 the determination is supported by substantial evidence.  I
23 agree with plaintiff's counsel that substantial evidence is
24 such evidence as reasonable minds would find supports a
25 determination.  I don't agree, however, that it is defective

1   that the Administrative Law Judge cherry-picked and relied on
2   favorable portions of the record that support his conclusion.
3   In almost every case there is conflicting evidence, and in
4   many cases, and this may be one of them, substantial evidence
5   could support either a finding of disability or a finding of
6   no disability; they're not incompatible.
7           My role is to determine whether this particular
8   determination, which hinges on the RFC finding, is supported
9   by substantial evidence.  And I conclude that it is.  The
10  burden of proof, of course, through step four and including
11  the RFC stage is on the plaintiff to establish her
12  limitations.  That is under *Poupore*, it's the Second
13  Circuit's determination.
14          The Nurse Practitioner Pascaretti's, clearly her
15  medical source statement, if you want to call it that, is not
16  fully compatible with the RFC; however, at the time this
17  determination was made, she was not an acceptable medical
18  source.  I note that Second Circuit has been very clear that
19  when you consider and reject either a treating source or a
20  non-treating source's opinions, you need not slavishly recite
21  all of the factors that are to be considered under Section
22  404.1527 of the regulations.
23          Nurse Practitioner Pascaretti's opinion suffered
24  from a couple of problems.  One, it's internally inconsistent
25  regarding sitting.  It's inconsistent with her treatment

1   notes that are at 2F and 6F.  She stated that she could not
2   give a work opinion.  And that's at 264.  And at one point
3   she stated that she filled it out the best she could.
4         And I don't understand the plaintiff to be relying
5   on her asthma, but it's very clear that her asthma and
6   hypertension and depression are all controlled and stable.
7   Interestingly, when she went to the emergency room on
8   September 24, 2012 suffering from shortness of breath, she
9   stated had not had an asthma attack in over a year and had no
10  inhaler at home.
11        The determination of light work is supported by
12  Dr. Dani.  Although Dr. Dani did note at 301 and 285 that
13  plaintiff has a wide-based gait.  It was also observed that
14  her gait was slightly ataxic but with no numbness or
15  tingling.  That's at 354.  But there are several references
16  to a normal gait, 273.  That's in Dr. Jenouri's clinical
17  assessment, 359, 365 and 381.
18        The light work determination is supported by
19  Dr. Jenouri's consultative report, which was given great
20  weight.  The ALJ's entitled to rely on that to supply
21  substantial evidence.  The ALJ also noted plaintiff's
22  conservative treatment.  She declined physical therapy.  She
23  has gaps in treatment; 911 to 1012 and 513 and 314.  Even
24  when she was insured, her treatment was conservative and
25  sporadic.  That's at 67.  She would only go every three to

1  six months to her physicians.
2      The misstatement, clearly there is a misstatement
3  that the ALJ attributes plaintiff to having fallen off a
4  moped, but I don't find that to be harmful error.  The ALJ
5  relied on the statement that the plaintiff was able to walk
6  in a parade, and I think that it was entirely permissible to
7  draw conclusions from that determination.  And also he noted
8  plaintiff primarily takes Advil for her pain.  That was at
9  page 238.  That was a reference that was made on December 2,
10  2015.
11      So I do find that the light work determination is
12  supported by substantial evidence.  There is no medical proof
13  in the record to support the additional limitation associated
14  with fatigue and being off task 15 percent of the time.  The
15  RFC being proper, the hypothetical that was posed to the
16  vocational expert, one of the several, that led to the
17  conclusion that there are jobs available that plaintiff can
18  perform in the national economy is therefore supported by
19  substantial evidence.
20      So I will grant judgment on the pleadings to the
21  defendant.
22      And I want to commend both of you.  That was an
23  excellent spirited argument.  I hope you have a good day.
24      *            *            *
25

C E R T I F I C A T I O N

    I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

*Eileen McDonough*

_____
EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter